Scott Keith Wilson, Federal Public Defender (#7347)
Nathan Phelps, Assistant Federal Public Defender (#14752)
OFFICE OF THE FEDERAL PUBLIC DEFENDER, DISTRICT OF UTAH
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
nathan_phelps@fd.org
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CODY TEERLINK,<br><br>    Defendant. | **Position of Mr. Teerlink with Respect to Sentencing Factors and Memorandum in Support of Sentence**<br><br>Case No. 2:22-cr-24<br><br>Judge Ted Stewart |

Mr. Teerlink, through counsel, offers this memorandum to aid the court in his sentencing. As shall be explained below, the Presentence Report suggests a sentencing range that is infected with error. But with or without those errors, the court should impose a sentence of time-served and three-year of supervised release. Under the facts of this case, that it the appropriate sentence.

**A. The Presentence Report miscalculates the appropriate sentencing range.**

The Presentence Report contains two serious errors that lead it to suggest an erroneous sentencing range. As drafted, the report suggests[1] that Mr. Teerlink should receive a sentence of 27 to 33 months. PSR ¶ 65. This range is based on a criminal history category of III and an offense level of 16. The criminal history category is correct, though over-representative. But for picayune offenses of no serious significant, Mr. Teerlink would be in category II. The errors lie in the computation of the offense level.

The first error is the denial of the "sporting" exception under USSG § 2K2.1(b)(2). Mr. Teerlink possessed the firearms only for sporting purposes, so his offense level should be reduced. The second error is the reliance on acquitted conduct—the conduct underlying Counts 3 and 4—to increase Mr. Teerlink's offense level. Both errors cause his sentencing range to be higher than it should be. But for those errors, Mr. Teerlink's offense level would be much lower—and consistent with the seriousness of the case.

**1. Mr. Teerlink possessed firearms for sporting purposes.**

Under Guideline § 2K2.1, a person who has a felony (or is otherwise prohibited from possessing firearms) normally starts at offense level 14 under that section. *See* § 2K2.1(a)(6)(A). That is where the PSR places Mr. Teerlink. *See* PSR ¶ 17. However, there is an exception under § 2K2.1 that allows for a much lower starting point. If a person who is otherwise at level 14 "possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition," then the offense level is reduced to six. USSG § 2K2.1(b)(2).

---

[1] As the court is well aware, the Guidelines are no longer mandatory, only advisory. Thus the sentencing range it provides only suggests what punishment this court should impose, a factor the court considers under 18 U.S.C. § 3553(a).

As the court heard during trial, and the PSR itself documents (¶ 59), Mr. Teerlink previously enjoyed a long and successful career in the firearm industry. His career focused on training others in the competent and careful use of firearms. Both for that career and for recreation, Mr. Teerlink spent considerable time shooting firearms to improve his skills. In 2021, under the mistaken belief that he had been relieved of his felony conviction, Mr. Teerlink attempted to purchase firearms three times, and succeed once. As he described at trial, he wanted to purchase the three firearms so he could begin practice with the weapons and potentially regain his former job. Significantly, all the firearms connected with this case were specifically chosen for their potential application at Mr. Teerlink's former job. And in the brief time he had the rifle connected with counts one and two, he used it without incident for target shooting. And, perhaps most weighty of all, Mr. Teerlink has no history of using firearms unlawfully.[2]

Application note six in § 2K2.1 advises the court to consider "the relevant surround circumstances" when deciding whether a person possessed a firearm for lawful sporting purposes or collection." Among the circumstances the court may relevant are "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law." USSG § 2K2.1 app. n. 6.

---

[2] This is because a person who has misused firearms in the past has demonstrated, at very least, a careless or reckless regard for dangerous weapons. It raises the specter that such behavior might be repeated unless that person's relationship to firearms has changed. By contrast, someone without a negative history—like Mr. Teerlink—raises no concern.

Under the plain language and bolstered by the application note, Mr. Teerlink qualifies for the reduction under § 2K2.1(b)(2). Mr. Teerlink's purpose was to practice shooting. Such target shooting is considered sport. *See U.S. v. Hanson*, 534 F.3d 1315, 1317 (10th Cir. 2008). Indeed, it is a pastime millions of Americans engage in and one encouraged by the federal government.[3] He did not unlawfully discharge or misuse the rifle he successfully purchased after the State of Utah's Bureau of Criminal Identification improperly approved Mr. Teerlink's purchase of the firearm. By more than a preponderance of the evidence, Mr. Teerlink has established that he possessed firearms for sporting purposes and thus should receive the reduction.

Despite this evidence, the PSR did not credit Mr. Teerlink with his reduction. It apparently credited the government's contention that Mr. Teerlink possessed the rifle connected to count one for self-defense. The government's rests that contention on Mr. Teerlink's motion to dismiss count two. *See* Doc. 76-1 at 2.[4]

Denying Mr. Teerlink the reduction based on the motion to dismiss is error. An attentive reading of that short motion reveals that the seed of that error. In it, Mr. Teerlink never claims that the rifle "was intended to be possessed for the purpose of self-defense." *Cf.* Doc. 76-1 at 2. Rather, the motion states that the rifle is "a weapon that is 'in common use' for self-defense," as it required for a firearm to be protected under the Second Amendment.

---

[3] One example of this is available on the Bureau of Land Management's Website. On a page titled "Hunting, Fishing, and Recreational Shooting," the BLM informs that target shooting is generally allowed on BLM lands and even directs site visitors to the National Shooting Sports Foundation web page for a map of places to shoot. *See* https://www.blm.gov/programs/recreation/recreation-programs/recreational-shooting.

[4] Although not indicated in the PSR addendum, the government included a copy of the motion of dismiss in its response to Mr. Teerlink's objection.

Doc. XXX at 3–4 (citing *New York State Rifle & Pistol Assoc. v. Bruen*, 142 S.Ct. 2111, 2134 (2022)). The motion further states that Mr. Teerlink's possession of that rifle was protected under the Second Amendment. *Id.* But the motion never asserts that the rifle was possessed for self-defense—Mr. Teerlink's motivation for possessing the rifle was irrelevant and never discussed.[5] Under 18 U.S.C. § 922(g), the charge targeted by the motion to dismiss, there is no element asking what use a firearm was possessed for. Section 922(g) outlaws mere possession.

Because the denial of the reduction is based on an admission that never occurred, the PSR provides the incorrect offense level. This court should grant the reduction, giving Mr. Teerlink credit for the eight-point reduction under § 2K2.1(b)(2).

### 2. The PSR incorrectly enhances Mr. Teerlink's offense level based on unproven conduct.

At paragraph 18, the PSR increases Mr. Teerlink's offense level by two levels under § 2K2.1(b)(1)(A) because it concludes that the offense involved three firearms. To reach that conclusion, the PSR includes the firearms connected to counts three and four. In those counts, Mr. Teerlink was charged with making false statements on ATF forms he completed on two different dates in May 2021. Mr. Teerlink objected to the inclusion of those firearms as he was acquitted of those counts after the government has failed to prove that he violated the law by giving false statements on the ATF forms. *See U.S. v. Griffith*, 584 F.3d 1004, 1013

---

[5] The matter would be different if some law restricted firearm possession to only those that are constitutionally protected. Then someone seeking protection under the amendment would likely have to assert that his possession was for self-defense. No such law exists. Nevertheless, there is historical precedent for that sort of restriction. For example, during Prohibition, alcohol was outlawed, but an exception was made for wine used for religious purposes.

(10th Cir. 2009) (holding that only criminal conduct may be considered as relevant conduct).

Despite his objection, the PSR still considered the firearms tied to counts three and four to increase Mr. Teerlink's offense level. It did so based only on the two ATF forms Mr. Teelink completed in May 2021 and Mr. Teerlink's admission to purchasing the rifle in March 2021. *See* Doc. 76-1. But the PSR fails to explain how it concluded that Mr. Teerlink that Mr. Teerlink knowingly provided false statements on the ATF forms by even a preponderance.

That unreasoned explanation leaves nothing to rebut. Without an explanation of why the evidence supports a conclusion that Mr. Teerlink violated the law, the conduct and firearms associated with counts three and four cannot be considered.

Of course, the government may press the same issue before the court. It is anticipated that it will assert that, though it failed to convince the jury that he violated the law, the court should find that the evidence supports a finding that it is more likely than not that Mr. Teerlink gave false answers in May 2021 regarding his felony status. But to meet its burden, the government will have to account for the all the other circumstances in this case, including the fact that Utah's BCI gave approval for Mr. Teerlink to purchase a firearm in March 2021 and did not deny, but only delayed his first purchase in May 2021. In light of these facts, the government will not meet its burden to show that Mr. Teerlink answered falsely.[6]

---

[6] Although this argument is arguably foreclosed by current Tenth Circuit precedent, the use of acquitted conduct at sentence also violates the Fifth Amendment right to due process and the Sixth Amendment right to a jury trial.

### 3. The correct sentencing range under the Guidelines is much lower.

Because of the errors discussed above, Mr. Teerlink's offense level was determined to be sixteen. However, the correct offense level should be six. This is the level that is reached after he is credited with the reduction under § 2K2.1(b)(2), and the improper enhancement under part (b)(1)(A) is discarded. That ten-point swing is consequential and set Mr. Teerlink's offense on much different footing. With a criminal history category of III, the offense level of six suggest a sentence of two to eight months. Even with the enhancement under § 2K2.1(b)(1)(A) improperly applied, the suggested range is six to twelve months.

Both of these ranges are in Zone B of the Sentencing Table. This is significant under the Guidelines. When there is a range in this zone, the Guidelines suggest that appropriate punishment can be a term of probation, § 5B1.1(a)(2), or a term of intermittent or community confinement. § 5C1.1(c).

### B. The court should impose a noncustodial sentence.

Mr. Teerlink asks the court to impose a sentence of time-served, three-year of supervised release, and no fine. Because Mr. Teerlink was incarcerated for six days before his initial appearance, that is an option for the court. And under the facts of this case, that is an appropriate sentence. And if Mr. Teerlink is correct about the errors in his PSR, it will not be a difficult sentence for the court to impose. Alternatively, the court should impose a term of probation. That sentence leaves more potential punishment in waiting should Mr. Teerlink commit a serious violation of the terms of his probation.

If, however, the court rules against Mr. Teerlink's arguments regarding his offense level, it should still impose a term of probation as punishment, and, if even more

punishment is needed, a fine. Under the relevant § 3553(a) factors, that is the appropriate sentence.

The nature of Mr. Teerlink's offense of conviction and his history with firearms support a probation sentence. Even if the court finds that the motion to dismiss prevents him from claiming the sportsmen's exception under § 2K2.1(b)(2), all the other reasons that were relevant to that exception show Mr. Teerlink to have a responsible and productive relationship to firearms. Though he was convicted of making a false statement, it was under unusual circumstances that did show the possibility of genuine confusion of his status. And the federal felony conviction itself is significant punishment. It will stand as an almost unsurmountable obstacle to Mr. Teerlink ever legally possessing firearms again. Given his past recreational and professional use of firearms, this itself is significant punishment. (It is also the reason Mr. Teerlink refused plea offers and proceeded to trial.)

Nor can Mr. Teerlink be considered a danger to the public so that a custodial sentence is needed for deterrence or to protect the public. The government's own conduct proves this point. The conduct Mr. Teerlink was prosecuted for occurred in March and May 2021. Federal authorities were aware of his action as least by January 2022 when he was indicted. Nonetheless, despite him having an established home and job, authorities did not arrest him until June 2022, more than a year after the offense occurred. This demonstrates that the federal government did not consider him a threat. This court should take the same position.

No incarceration is needed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment. As far as federal crimes go, Mr. Teerlink's case is pretty tepid. And under the unusual facts of the case, where Mr. Teerlink was only

restricted due to a DUI, and, under different circumstances, even that restriction might have been lifted, incarceration would be over-punishment.

(If the court disagrees with Mr. Teerlink's argument against using acquitted conduct under the Guidelines, it should still disregard that conduct from consideration when deciding what sentence it should impose. The use of acquitted conduct to punish does not provide for a just punishment and promotes disrespect for the law.)

Finally, the court should note that Mr. Teerlink's situation is unusual in another way. His is one of the very few violations even prosecuted. According to the Government Accountability Office, it is rare for federal authorities to prosecute a person for providing false information on an ATF form for a background check. In the fiscal year 2017, of about 8.6 million background checks, there were 112,090 denials. Of those denials, ATF agents only investigate 12,710—roughly 11%. Of those, US. Attorney's offices only prosecute twelve. That's .1% of referrals, and .01% of all violations.[7] In other words, the average person who commits this offense sees nothing come of it. Perhaps Mr. Teerlink would never have been prosecuted had he never called the BCI and reported the issue.

The facts of this case simply do not scream of for prison. A probation sentence is sufficient, and that is what the court should impose.

**Statement of Good Faith**

Mr. Teerlink, through counsel, has conferred in good faith with the probation office and opposing counsel in an attempt to resolve any disputed matters.

---

[7] United States Government Accountability Office, "Few Individuals Denied Firearms Purchases Are Prosecuted and ATF Should Assess Use of Warning Notices in Lieu of Prosecutions," September 2018, available at https://www.gao.gov/assets/gao-18-440.pdf.

DATED June 27, 2023.

                                              */s/ Nathan Phelps*
                                              Counsel for Cody Teerlink